

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LISA PROCTOR and DUNCAN PROCTOR, | § | |
| Plaintiffs, | § | |
| v. | § | NO. 2:06-CV-255-J |
| ALLSUPS CONVENIENCE STORES, INC., a New Mexico Corporation, LONNIE D. ALLSUP, an individual and BARBARA J. ALLSUP, an individual, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

On March 7, 2008, the Defendants filed a *Motion for Decertification and Brief in Support*. The Plaintiffs filed their response on April 7, 2008, and Defendants filed a reply on April 16, 2008. Defendants' motion is GRANTED.

### BACKGROUND

Plaintiffs filed this case on September 22, 2006, alleging violations of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §207(a). The named Plaintiffs filed on behalf of themselves and as representatives of other similarly situated workers. Allsup's Convenience Stores is a New Mexico Corporation that operates 301 company stores in New Mexico and Texas. Plaintiffs allege that Allsup's conspired and acted concertedly to avoid paying overtime to its hourly employees. Plaintiffs allege that Allsup's required their employees to clock out after completing forty hours of work per week and to continue working off the clock for 1 to 3 hours each week.

Plaintiffs allege that they were not able to finish their duties during their shifts, and had to stay late in order to clean bathrooms, transition to the next shift, balance the cash register, and complete paperwork.

Each Allsup's store is allocated a certain number of working hours per week by corporate headquarters. This number of hours is used to set shifts for the hourly workers. The number of hours is set based partly on sales and traffic in each store. Stacey Owens, the director of human resources for Allsup's, admits that the company tries to keep the amount of overtime worked to a minimum to control costs. Store managers can also lose a part of their bonus if they go over their store's allotted overtime hours.

On April 18, 2007, the Court granted Plaintiffs' motion for class certification and entered an order authorizing notice pursuant to 29 U.S.C. §216(b). Notice was sent to all hourly employees of Allsup's Convenience Stores in Texas and New Mexico who were employed from April 18, 2004 to the date of the order. In addition to the two named plaintiffs, 1,072 additional consent forms were filed by the court-designated deadline. The parties have conducted significant discovery, including taking the depositions of 34 plaintiffs, Lonnie and Barbara Allsup, and director of human resources Stacey Owens. The Defendants now ask that the Court decertify the class and allege that the plaintiffs are not "similarly situated" to one another.

## STANDARD FOR DECERTIFICATION

The FLSA requires employers to compensate their non-exempt hourly employees at overtime rates for time worked over the statutorily-defined maximum of 40 hours per week. 29 U.S.C. §207(a). If an employer does not provide that pay, the statute authorizes an employee to bring suit against his or her employer not only on behalf of him or herself, but also on behalf of

other "similarly situated" employees. 29 U.S.C. §216(b). The purpose of allowing this type of action is "to serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights." *Basco v. Wal-Mart Stores, Inc.*, 2004 U.S. Dist. LEXIS 12441, *7 (E.D. La.), *citing Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp.2d 941, 943 (W.D. Ark. 2003), *citing Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). In order to bring a representative action, however, the plaintiffs must be "similarly situated" to one another. *Id.*

The similarly situated analysis follows a two step process typified by *Lusardi v. Xerox Corp.* 118 F.R.D. 351 (D.N.J. 1987), *mandamus granted in part, appeal dismissed*, *Lusardi v. Lechner*, 855 F.2d 1062 (3rd Cir. 1988), *vacated in part, modified in part, and remanded*, *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J. 1988), *aff'd in part, appeal dismissed*, *Lusardi v. Xerox Corp.*, 957 F.2d 964 (3rd Cir. 1992). In this process, the Court considers if potential opt-in plaintiffs are "similarly situated" at two different stages in the litigation. *Mooney v. Aramco Services, Inc.*, 54 F.3d 1207, 1213 (5th Cir. 1995). At the first stage, the Court determines if notice should be sent to potential class member plaintiffs. *Id.* At this stage, the Court usually has a minimal amount of evidence before it and uses a "fairly lenient" standard. *Id.* at 1214. This usually results in a conditional certification of a class, potential members of which are then given notice and may opt-in to the lawsuit. *Id.* In the present case, the Court has already conducted this analysis and authorized the sending of notice to potential plaintiffs.

Following discovery, the Court enters the second phase of the analysis. This is often done at the initiation of a motion for decertification. *Id.* With the aid of information gained in discovery, the Court considers if the opt-in plaintiffs are "similarly situated" to the named plaintiffs. *Id.* If they are, the representative action may proceed. *Id.* If they are not, the class is

decertified, the opt-in plaintiffs are dismissed, and the original named plaintiffs may proceed with their own claims only. *Id.*

At this second stage, the burden is on the Plaintiff to prove that the individual class members are similarly situated. *Bayles v. Am. Med. Response of Col., Inc.*, 950 F. Supp. 1053, 1062-63 (D. Colo. 1996), *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003), *Basco*, 2004 U.S. Dist. LEXIS 12241 at *14. Because the parties have been able to conduct discovery, the similarly situated inquiry at the second stage is much more stringent. *Harris v. FFE Transp. Servs., Inc.*, 2006 U.S. Dist. LEXIS 51437, *7-8 (N.D. Tex.). The Court considers several factors at this stage in the analysis, including:

> (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the defendant] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations…

*Basco*, 2004 U.S. Dist. LEXIS 12441 at *10, *citing Mooney*, 54 F.3d at 1213 n.7, *citing Lusardi*, 118 F.R.D. at 359. While the plaintiffs must show that they are "similarly situated," this does not mean they must establish they are "identically situated." *Id.* at *15, *citing Helmerich and Payne Intern'l Drilling Co.*, 1992 U.S. Dist. LEXIS 5367, *2 (E.D. La. 1992). Instead, the question is if there is "a demonstrated similarity among the individual situations…some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice.]" *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1998), *see also Helmerich*, 1992 U.S. Dist. LEXIS 5367 at *2. Decertification is proper if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D. Colo. 1987), *see also Helmerich*, 1992 U.S. Dist. LEXIS 5367 at *2. In fact, "the more material distinctions revealed by the evidence, the more likely the district court is

to decertify the collective action." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007).

In looking at the factual disparities among Plaintiffs, the Court must consider if it can "coherently manage the class in a manner that will not prejudice any party." *Johnson.* 2005 U.S. Dist. LEXIS 44259 at *32, *citing Lusardi*, 118 F.R.D. at 360. If there is "no single decision, policy, or plan" that affects the Plaintiffs, the case will have "enormous manageability problems…" *Id.* at *34, *citing Miekle v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 764 (N.D. Ill. 2004).

District courts have granted motions to decertify where there was great variety in the factual allegations among the individual Plaintiffs. In *Johnson v. TGF Precision Haircutters, Inc.*, the Court granted a motion for decertification at the second stage of the "similarly situated" analysis. 2005 U.S. Dist. LEXIS 44259 (S.D. Tex.). The Plaintiffs alleged that hourly employees were not being paid overtime and were working off the clock. *Id.* at *6. At the first stage, the Court authorized sending notice to nearly 4000 potential plaintiffs, and 264 employees from over 90 locations filed opt-in consents. *Id.* at *7. The Defendant then moved to decertify the class. *Id.* The Court found that the evidence showed "a substantial variance of experiences by different Plaintiffs under different managers and at different shops around Texas." *Id.* at *12. For example, Plaintiffs at some stores stated that they were not allowed to clock in when they worked for 15 minutes before the store opened. *Id.* At other stores, employees did clock in for that time. *Id.* Additionally, the Plaintiffs varied on whether or not they were required to clock-out when waiting for customers and even if they were allowed to leave the store when clocked-out and waiting. *Id.*

The Court noted that the "large number of widespread shops, each with its own manager, understandably appears to have contributed materially to the dissimilarities in the Plaintiffs' experiences." *Id.* at *12-13. While the Plaintiffs alleged an overarching policy to deny them overtime, the company's actual policy in the manual instructed employees to make sure their timesheets accurately reflected the hours worked. *Id.* at *14. The Court concluded that although the evidence established that "some Plaintiffs may have prima facie claims for FLSA violations at different times, in different places, in different ways, and to differing degrees"; the overall "evidence of varied particular violations" was not enough to prove a "uniform, systematically applied policy of wrongfully denying overtime pay to Plaintiffs." *Id.* at *22. The "highly variable" nature of the alleged violations that differed by manager meant that the class should be decertified. *Id.*

Even at the first, more lenient stage of initial certification, courts consider the factual disparities among the Plaintiffs and sometimes refuse to certify a class and send notice. In *Basco v. Wal-Mart Stores, Inc.*, Plaintiffs sought class certification and notice to all similarly situated employees which the Court denied. 2004 U.S. Dist. LEXIS 12441 (E.D. La.). As in the present case, the Plaintiffs in *Basco* alleged that as hourly workers, they were required to work beyond their scheduled hours after clocking out, that they were not paid for this time spent working off the clock, and that managers at Wal-Mart stores had "manipulated time and wage records to reduce amounts paid to Wal-Mart employees, including overtime pay." *Id.* at *6. Plaintiffs sought to certify a class that included all Louisiana Wal-Mart employees who were not paid overtime. *Id.* at *17. In their motion for class certification, Plaintiffs alleged that they were all similarly situated because Wal-Mart had a "mentality" of "no overtime and strict budgeting of time and employee costs." *Id.* The Plaintiffs also presented evidence of bonus incentives given

to store managers who kept salary costs down. *Id.* at 19. In contrast, Wal-Mart presented evidence that managers are instructed to never allow employees to work off the clock. *Id.* at 21.

The Court denied the motion to certify the class because the effects on the workers were "neither homogenous nor lend[ed] themselves to collective inquiry." *Id.* at 22. In fact, the effects were "anecdotal" and "particularized," as shown by the Plaintiffs' own witnesses testifying that any policy was not "uniformly or systematically implemented at any given store." *Id.* Analyzing the motion under the more demanding second stage inquiry, the Court went on to note that the plaintiffs "performed different jobs at different geographic locations and were subject to different managerial requirements which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis." *Id.* at 26. The Court denied the motion for class certification.

Similarly, in *Simmons v. T-Mobile USA, Inc.*, the Court refused to certify a class and send notice to "all current and former senior sales representatives employed" by the defendant in Texas for the past three years. 2007 U.S. Dist. LEXIS 5002 (S.D. Tex.). The Court found that the case involved "claims of 'off the clock' unpaid overtime, where allegedly dozens (if not hundreds) of different low-level supervisors with wide management discretion in practice violate Defendant's clear, lawful written policies at some or many of Defendant's more than one hundred different retail locations." *Id.* at *25.

**DECERTIFICATION IN THE PRESENT CASE**

In the present case, there is no evidence of a single decision, policy, or plan that is causing the Plaintiffs to work off the clock. In fact, the evidence indicates that Allsup's official policy was to prohibit working off the clock. The testimony of the opt-in Plaintiffs confirms that

there is no official policy at Allsup's of having or allowing employees to work off the clock. Many of the opt-in Plaintiffs testified that they knew about Allsup's policy prohibiting employees from working off the clock. Juan Cherry, Maria Zamora, Andrea Exparaza, James Lasseter, and Sara Heater are only some of the Plaintiffs who said in their depositions or in their responses to interrogatories that they knew Allsup's policy was that employees were not allowed to work off the clock. Some Plaintiffs testified that they were explicitly told that they were *not* allowed to work off the clock. For example, Dalynn Green and Carrie Bennett were told about the policy by their store managers; Carolyn Shaw and Robyn Skiles were told at training; David Price was told by the area manager; Paige Guinn was told by her store and her district manager; and Patricia Saenz was told by her district manager.[1]

In addition to lacking evidence of any policy that employees may work off the clock, the Plaintiffs also present claims that are factually disparate. Some Plaintiffs say that they never worked off the clock. Plaintiffs Brenda Bridges and Juan Jaramillo both wrote in their responses to interrogatory questions, "I never worked off the clock." Plaintiffs' expert, Bradley T. Ewing, acknowledged in his report that 10% of the Plaintiffs who were deposed in this case said they did not work off the clock.

Other Plaintiffs allege that while they remained clocked in the entire time they were working, their paychecks were not correct. Plaintiff Kimberly Dawn Pilgreen testified she never worked off the clock, but was paid straight time instead of the overtime she was entitled to. Plaintiff Arilee Marsh testified that she never worked off the clock, but that her paycheck did not

---

[1] Plaintiffs allege that it is sufficient proof of a single policy that there are no records kept of the time employees worked off the clock. However, if this was all that was needed to prove a single policy, any case alleging work done off the clock would be certifiable as a class. While failure to keep records of the time that Plaintiffs worked may in some cases be an independent violation of the FLSA, it is not enough to constitute a policy that makes this class appropriate for a single lawsuit.

accurately reflect all the hours she worked.  Plaintiff Valerie Smith testified that she always worked on the clock, but that she was not paid for the overtime she worked.

The quantity of time and the pattern of incidents Plaintiffs allege they have spent working off the clock also vary.  Some Plaintiffs allege that they spent a large portion of their work time off the clock.  Plaintiff Patience Gunn wrote in her interrogatory responses that she worked off the clock for 6 hours at a time over five months of working for Allsup's.  Plaintiff Angel Aragon testified that he worked 8 to 10 hours of unpaid overtime every week.  Plaintiff Lilly Tamayo testified that some weeks, she worked 80 or 90 hours and was only paid for 50.  Other Plaintiffs allege a minimal amount of time worked off the clock.  Plaintiff Teena Thompson, for example, testified she worked 20 minutes off the clock four or five times during her employment with Allsup's.  Plaintiff Dynasty Richardson wrote in her interrogatory responses that she forgot to clock in on one occasion and was not paid for three hours.  Plaintiff Deborah Knotts wrote in her interrogatory responses that she possibly worked off the clock on her last day of employment only.  Similarly, Plaintiff Julie Smith wrote in her interrogatory responses that she worked one hour off the clock on a single occasion.

The Plaintiffs' claims vary from store to store and manager to manager.  Plaintiff Kenrick Harmon testified that he worked at a store in Texas where he was asked to bag ice or unload trucks off the clock.  However, when he worked at a different Texas store under a different manager, he was never allowed to do work off the clock.  Plaintiffs Martin Salazar and Juan Montano testified that whether or not they worked off the clock depended on which store they were working at.  Plaintiffs Sara Heater and Bridget Garcia testified that they only worked off the clock for one manager and not for their other managers.

The evidence shows a large factual variety among the individual Plaintiffs' claims and the times they allege they worked off the clock. These differences in the Plaintiffs' claims mean that the Defendant's defenses would also vary. Defenses to claims that individuals did not work off the clock but were not paid correctly will be distinct from the Plaintiffs alleging they were asked to work off the clock by management. As for off the clock claims, the *Basco* court noted that the variety of defenses could include

> (1) that the particular class member did not in fact work off-the-clock, (2) any instructions received to work off-the-clock without compensation were outside the scope of authority and directly contrary to the well established policy and practice, (3) even if a particular class member did work off-the-clock, that employee unreasonably failed to avail themselves of curative steps provided by defendant to be compensated for that work…(5) a class member had an actual and/or constructive knowledge of [Defendant's] policies banning off the clock work and voluntarily chose to engage in such work in deviance of that policy…

2004 U.S. Dist. LEXIS 12441 at *25-26. Other defenses will involve alleging that some of the claims are *de minimis*.

Management of this case and procedural concerns also support decertification. The Plaintiffs have not suggested any alternative ways to try the case or any ways to address the disparate factual allegations of the more than 1,000 Plaintiffs. Plaintiffs do suggest that the 3% of the class who was deposed could serve as a representative group. It is true that representative testimony can sometimes suffice so that not every plaintiff must testify. *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973). A representative sample of employees can provide the proof of a prima facie case of a FLSA violation. *Reich v. S. New England Commc'ns Corp.*, 121 F.3d 58, 67 (2nd Cir. 1997), *citing Reich v. S. Maryland Hosp., Inc.*, 43 F.3d 949, 951 (4th Cir. 1995); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701-02 (3d Cir. 1994). Although the 2nd Circuit has affirmed representative testimony of only 2.7% of a class, that case involved "actual consistency" among the testimony "both within each category [of employee] and

overall"; there was "no contradictory testimony"; the abuse arose from a policy that was consistently applied; and the uncompensated "periods at issue were the employees' lunch hours, which are predictable, daily-recurring periods of uniform and predetermined duration." *Id.* at 68. In this case, there is no consistency among the testimony, there is no consistently applied policy resulting in working off the clock, and the time spent working off the clock is not alleged to be uniform or of a predetermined duration.

The cases that the Plaintiffs cite for recent examples of denials of decertification are distinguishable from the present case. The *Behr* case is an example of the analysis conducted at the first and more lenient stage in determining if notice should be sent to a class. *Behr v. Drake Hotel*, 586 F. Supp. 427 (N.D. Ill. 1944). In other cases the Plaintiff cites, the issue is whether or not employees' job duties are similar enough for making a single the determination if the class was properly classified as exempt. *See Bradford v. Bed Bath & Beyond*, 184 F. Supp. 2d 1342 (N.D. Ga. 2002). *Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 265 (D. Conn. 2002).

In the case before this Court, all three considerations lead to the conclusion that decertification is appropriate. The Plaintiffs have worked in settings that vary from store to store, manager to manager, and day to day. The defenses that the Defendant will offer vary with these factual disparities. Finally, it would be fairer and procedurally more expedient to decertify the class.

**CONCLUSION**

The Defendants' Motion to Decertify the Class is GRANTED, and all opt-in Plaintiffs are DISMISSED from this action without prejudice to each such opt-in Plaintiff filing a suit in his or her own behalf. To avoid prejudice to individual opt-in Plaintiffs who may choose to file their

own cases, the Court invokes its equity powers to toll the applicable statute of limitations for 30 days after entry of this Order. The claims of Plaintiffs Lesa Proctor and Duncan Proctor remain pending herein for trial.

IT IS SO ORDERED.

Signed this 24th day of April 2008.

/s/ Mary Lou Robinson

**MARY LOU ROBINSON**
**UNITED STATES DISTRICT JUDGE**